JOHNSON & PHAM, LLP
Christopher Q. Pham, SBN: 206697
        E-mail: cpham@johnsonpham.com
Marcus F. Chaney, SBN: 245227
        E-mail: ndrey@johnsonpham.com
Jason R. Vener, SBN: 267941
        E-mail: ppham@johnsonpham.com
6355 Topanga Canyon Boulevard, Suite 326
Woodland Hills, California 91367
Telephone:    (818) 888-7540
Facsimile:    (818) 888-7544

Attorneys for Plaintiff
ADOBE SYSTEMS INCORPORATED

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADOBE SYSTEMS INCORPORATED, a Delaware Corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>SHAMCY ALGHAZZY, an Individual, doing business as SA SOFTWARE; and DOES 1-10, Inclusive,<br><br>                    Defendants. | Case No.:  5:15-cv-01443<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**(1) FEDERAL TRADEMARK INFRINGEMENT [15 *U.S.C.* § 1114 / *Lanham Act* §32(a)];**<br>**(2) FALSE DESIGNATION OF ORIGIN / FALSE OR MISLEADING ADVERTISING / UNFAIR COMPETITION [15 *U.S.C.* §1125(a) / *Lanham Act* §43(a)];**<br>**(3) TRADEMARK DILUTION [15 *U.S.C.* §1125(c)];**<br>**(4) FEDERAL COPYRIGHT INFRINGEMENT [17 *U.S.C.* §501(a)];**<br>**(5) UNLAWFUL / UNFAIR / FRAUDULENT BUSINESS PRACTICES [*California Business & Professions Code* §17200];**<br>**(6) UNFAIR COMPETITION [California Common Law]; and**<br><br>**[DEMAND FOR JURY TRIAL]** |

/ / /

/ / /

/ / /

/ / /

COMES NOW, Plaintiff ADOBE SYSTEMS INCORPORATED hereby files its Complaint for Damages against Defendants SCHAMCY ALGHAZZY, doing business as SA SOFTWARE, and DOES 1-10, inclusive (collectively "Defendants").

## PARTIES

1.     Plaintiff ADOBE SYSTEMS INCORPORATED (hereinafter "Plaintiff" or "Adobe") is now, and was at the time of the filing of this Complaint and at all intervening times, a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business in San Jose, California.

2.     Plaintiff is informed and believes that Defendant SHAMCY ALGHAZZY, doing business as SA SOFTWARE (hereinafter "ALGHAZZY"), is now, and was at the time of the filing of this Complaint and at all intervening times, an individual residing in Elm Grove, Wisconsin.

3.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants herein named as DOES 1-10, inclusive, are unknown to Plaintiff. Plaintiff therefore sues said Defendants by such fictitious names.  When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this pleading accordingly.

4.     Plaintiff further alleges that Defendants ALGHAZZY and DOES 1-10, inclusive, sued herein by fictitious names, are jointly, severally and concurrently liable and responsible with the named Defendants upon the causes of action hereinafter set forth.

5.     Plaintiff is informed and believes and thereon alleges that at all times mentioned herein Defendants ALGHAZZY and DOES 1-10, inclusive, and each of them, were the agents, servants and employees of every other Defendant and the acts of each Defendant, as alleged herein, were performed within the course and scope of that agency, service or employment.

## JURISDICTION

6.     This Court has federal subject matter jurisdiction over this matter pursuant to 28 *U.S.C.* §§1331 and 1338 (a) and (b), in that the case arises out of claims for trademark infringement, false designation of origin / false or misleading advertising / unfair competition,

and dilution under the *Lanham Act* (15 *U.S.C.* §1051 *et seq.*), and copyright infringement under 17 *U.S.C.* §501(a). This Court has supplemental jurisdiction pursuant to 28 *U.S.C.* §§1367(a) and 1338 (a) and (b).

7. Venue is proper, *inter alia*, pursuant to 28 *U.S.C.* §1391(b), because on information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and has caused damages to Plaintiff in this district.

8. Personal jurisdiction exists over Defendants because on information and belief, Defendants conduct business in California and in this judicial district, have purposefully directed action to California and this district, and/or have otherwise availed themselves of the privileges and protections of the laws of the State of California, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

9. This Court has personal jurisdiction over Defendants because Defendants have committed acts of infringement and unfair competition in this district and/or Defendants have sufficient minimum contacts with this district such that the exercise of jurisdiction over Defendants by this Court does not offend traditional notions of fair play and substantial justice. Among other things, Defendants have advertised, offered to sell and sold unauthorized and/or counterfeit software products that infringe the trademarks and copyrights of Plaintiff using an interactive Internet website and knowing or having reason to know that consumers throughout the United States, including within this judicial district, would purchase said unauthorized and/or counterfeit goods from Defendants, believing them to be authorized goods manufactured and distributed by Plaintiff or its authorized distributors. Defendants also engaged in the aforesaid acts with knowledge that Adobe resides within this judicial district.

## INTRADISTRICT ASSIGNMENT

10. Pursuant to Rule 3-2(c) of the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California ("Civil L.R.") and the Court's Assignment Plan, this is an Intellectual Property Action to be assigned on a district wide-basis.

/ / /

11.    Assignment to the San Jose Division would nonetheless be appropriate pursuant to Civil L.R. 3-2(e) because a substantial part of the events that give rise to Plaintiff's claims against Defendants occurred in Santa Clara County, California, where Plaintiff's principal place of business is located.

## GENERAL ALLEGATIONS

### Plaintiff and its Famous ADOBE® Software Products

12.    Plaintiff is a global leader in developing and distributing innovative computer software.  Its products and services offer developers and enterprises tools for creating, managing, delivering and engaging with compelling content across multiple operating systems, devices and media.  The software industry is competitive, and Plaintiff undertakes great expense and risk in conceiving, developing, testing, manufacturing, marketing, and delivering its software products to consumers.  Software piracy undermines Plaintiff's investment and creativity, and misleads and confuses consumers.

13.    The success of Plaintiff's ADOBE®, ACROBAT®, ADOBE AUDITION®, AFTER EFFECTS®, CAPTIVATE®, COLD FUSION®, CONTRIBUTE®, CREATIVE SUITE®, DIRECTOR®, DREAMWEAVER®, FIREWORKS®, FLASH BUILDER®, FLASH CATALYST®, FRAME MAKER®, FREEHAND®, ILLUSTRATOR®, INCOPY®, INDESIGN®, LIGHTROOM®, LIVECYCLE®, OVATION®, PAGEMAKER®, PHOTOSHOP®, and ROBOHELP® products and services, among others (collectively referenced and referred to herein as "Adobe-Branded Software"), is due in part to Plaintiff's marketing and promotional efforts.  These efforts include advertising and promotion through Plaintiff's websites, print and other Internet-based advertising, among other efforts.  Plaintiff has spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in its Adobe-Branded Software and the associated marks thereto.

14.    The success of the Adobe-Branded Software, and other products and services related thereto, is not due to Plaintiff's promotional efforts alone.  Rather, the popularity of Adobe-Branded Software is also due in part to consumers and the word of mouth buzz consumers have generated.

4

COMPLAINT FOR DAMAGES

15.     As a result of Plaintiff's efforts, the quality of Plaintiff's products, and the promotion and word of mouth buzz, Adobe-Branded Software and the associated marks thereto have been prominently placed in the minds of the public.  Consumers, purchasers and members of the public have become familiar with Plaintiff's software and other products and services and have come to recognize Adobe-Branded Software and the associated marks thereto and associate them exclusively with Plaintiff.  Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such association.  Indeed, Adobe-Branded Software and the associated marks thereto are famous in the United States and throughout the world and have acquired secondary meaning in the minds of consumers.

16.     While Plaintiff has gained significant common law trademark and other rights in its Adobe-Branded Software through its use, advertising and promotion, Plaintiff has also protected its valuable rights by filing for and obtaining federal trademark and copyright registrations.

17.     Plaintiff has secured registrations for its ADOBE®, ACROBAT®, ADOBE AUDITION®, AFTER EFFECTS®, CAPTIVATE®, COLD FUSION®, CONTRIBUTE®, CREATIVE SUITE®, DIRECTOR®, DREAMWEAVER®, FIREWORKS®, FLASH BUILDER®, FLASH CATALYST®, FRAME MAKER®, FREEHAND®, ILLUSTRATOR®, INCOPY®, INDESIGN®, LIGHTROOM®, LIVECYCLE®, OVATION®, PAGEMAKER®, PHOTOSHOP®, ROBOHELP® and various design trademarks, among others, with the United States Patent and Trademark Office.  A non-exhaustive list of Plaintiff's trademark registrations is attached hereto as **Exhibit A** (collectively referenced and referred to herein as "Plaintiff's Trademarks").

18.     Similarly, Plaintiff's Adobe-Branded Software is copyrightable subject matter, and Plaintiff has secured copyright registrations for various versions of its ACROBAT©, ADOBE AUDITION©, AFTER EFFECTS©, CAPTIVATE©, COLD FUSION©, CONTRIBUTE©, CREATIVE SUITE©, DIRECTOR©, DREAMWEAVER©, FIREWORKS©, FLASH BUILDER©, FLASH CATALYST©, FRAME MAKER©, FREEHAND©, ILLUSTRATOR©, INCOPY©, INDESIGN©, LIGHTROOM©, LIVECYCLE©, OVATION©,

PAGEMAKER©, PHOTOSHOP©, and ROBOHELP© software, among others, with the United States Copyright Office.  A non-exhaustive list of Plaintiff's copyright registrations is attached hereto as **Exhibit B** (collectively referenced and referred to herein as "Plaintiff's Copyrights").

**Plaintiff's Licensing Restrictions**

19.     As part of its international licensing and distribution programs, Plaintiff imposes various restrictions on the distribution of all ADOBE® software, including Adobe-Branded Software.  Every piece of Adobe-Branded Software is licensed.  Every distribution agreement entered into by Plaintiff clearly states that all Adobe-Branded Software is subject to a license, and anyone obtaining any Adobe-Branded Software is only granted a license, pursuant to Plaintiff's Software License Agreement ("SLA").  Plaintiff maintains title to the Adobe-Branded Software at all times and at no point does it transfer any ownership of title.  Each and every piece of Adobe-Branded Software is subject to numerous restrictions on use, location of distribution, transfer, and even who is qualified to obtain the product, in certain circumstances.

20.     Original Equipment Manufacturer ("OEM") versions of Adobe-Branded Software are intended to be distributed only with approved hardware components as a bundle.  OEM software may not be unbundled and distributed separately from the specific hardware components for which they were intended.  OEM software may not be resold, pursuant to Plaintiff's SLA. OEM software is not the same as full retail versions of the same type of Adobe-Branded Software, usually offering less functionality and no technical support.

21.     Plaintiff also has different regions in which it distributes different versions of Adobe-Branded Software.  All Adobe-Branded Software authorized for distribution throughout the United States is manufactured in the United States and states the same on the packaging. Adobe-Branded Software intended for distribution outside of North America is not authorized or licensed to be imported into or distributed in the United States.  All software which indicates that it was made or printed in a country other than the United States is not licensed or authorized to be imported or distributed in the United States.

/ / /

/ / /

22.     Plaintiff distributes its Adobe-Branded Software through physical products as well as Electronic Software Downloads ("ESD"). A reseller must be specifically authorized by Plaintiff to sell ESD versions of Plaintiff's software products or else the product is unauthorized.

### Defendants' Wrongful and Infringing Conduct

23.     Particularly in light of the success of Plaintiff and Plaintiff's products as well as the reputation they have gained, Plaintiff and its well-recognized products have become targets for unscrupulous individuals and entities who wish to take a free ride on the goodwill, reputation and fame Plaintiff has spent considerable effort to build up in its products and marks and the works embodied in Plaintiff's software products.

24.     A large number of individuals and entities deal in unauthorized, pirated and/or counterfeit Adobe-Branded Software products and other products and services, including the famous ACROBAT®, ADOBE AUDITION®, AFTER EFFECTS®, CAPTIVATE®, COLD FUSION®, CONTRIBUTE®, CREATIVE SUITE®, DIRECTOR®, DREAMWEAVER®, FIREWORKS®, FLASH BUILDER®, FLASH CATALYST®, FRAME MAKER®, FREEHAND®, ILLUSTRATOR®, INCOPY®, INDESIGN®, LIGHTROOM®, LIVECYCLE®, OVATION®, PAGEMAKER®, PHOTOSHOP®, and ROBOHELP® products. Their actions vary and include manufacturing, copying, exporting, importing, advertising, promoting, selling, and distributing counterfeit and/or otherwise unauthorized Adobe-Branded Software products.

25.     Plaintiff investigates and enforces against such activity and through such efforts learned of Defendants and their advertising, importing, exporting, selling and/or distributing infringing Adobe-Branded Software products within the United States. Defendants own and operate an interactive storefront in the Internet website www.ebay.com (hereinafter as "eBay"), under the Seller ID "shamcy," and offering for sale various software products, including altered, unauthorized and/or counterfeit Adobe-Branded Software products.

26.     On or about October 17, 2014, Plaintiff purchased a purported "Adobe CS6 Design & Web Premium Windows" from Defendants' eBay storefront, under the Seller ID "shamcy," for a cost of $1249.99. The product was purchased and charged to Plaintiff's PayPal

1  electronic payment account. Defendants then shipped a Memorex DVD+R disc to Plaintiff
2  whereon Defendants had placed and/or "burned" an unauthorized copy of Adobe Creative Suite
3  6 Design & Web Premium. Defendants then contacted Plaintiff and informed Plaintiff that
4  Defendants would provide a serial number activation key and refund $300.00 of Plaintiff's
5  October 17, 2014 purchase in exchange for not having to provide Plaintiff with the use license
6  for the product purchased. Defendants then refunded Plaintiff $300.00 of the October 17, 2014
7  purchase, sent Plaintiff a serial number key and directed Plaintiff to Plaintiff's own
8  "Help/Download" page to download the "Adobe CS6 Design & Web Premium Windows"
9  purchased on October 17, 2014. A true and correct copy of the PayPal Transaction Details
10 concerning the October 17, 2014 purchase of an "Adobe CS6 Design & Web Premium Windows"
11 from Defendants receipt is attached hereto as **Exhibit C.**

12     27.    The serial number key Defendants provided Plaintiff was examined by Plaintiff
13 and determined to originate from a point of sale product, meant for resale by an authorized
14 Adobe reseller at a physical retail outlet and which was meant to be sold with and accompanied
15 by a physical disk containing Adobe-brand software.

16     28.    Plaintiff also examined the Memorex DVD+R disc which contained an
17 unauthorized digital copy of Adobe Creative Suite 6 Design & Web Premium that had been
18 copied or "burned" to the Memorex DVD+R disc by Defendants without Plaintiff's authorization.

19     29.    Plaintiff has never authorized or consented to Defendants' use of Plaintiff's
20 Trademarks, or any confusingly similar mark, or Plaintiff's Copyrights outside of the use
21 allowed in an SLA.  Specifically, Plaintiff has never authorized Defendants to manufacture, copy,
22 unbundle, or alter any of Plaintiff's Copyrights or use any of Plaintiff's Trademarks on or in
23 connection with such manufactured, copied, unbundled, or altered Adobe-Branded Software.

24     30.    Defendants press unauthorized copies of Plaintiff's Adobe-Branded Software in
25 direct violation of Adobe's exclusive copyrights and which, through said copying, come to bear
26 spurious and counterfeit trademarks. Defendants also resell, without Plaintiff's authorization
27 copies of Adobe-Branded Software in violation of SLAs and without any right or title entitling
28 Defendant's to resell said products, all in violation of Plaintiff's exclusive rights of distribution.

31. Defendants alter, unbundle, and/or change the components of OEM copies of Adobe-Branded Software, before offering for sale, selling and/or distributing these OEM copies to resellers and end users in the United States and within this judicial district.

32. Defendants purchase copies of Adobe-Branded Software intended for international distribution and import them into the United States with the intent to resell to buyers in the United States and within this judicial district, without authorization from Plaintiff. Defendants have offered for sale, sold, and/or distributed Adobe-Branded Software that were intended solely for international distribution, without authorization from Plaintiff, to resellers and end users in the United States and within this judicial district.

33. Defendants split, remove, and/or sell separately from Adobe-branded software products, without Plaintiff's authorization, Adobe software serial number keys and Adobe-brand product packaging containing serial number keys which are meant to accompany physical Adobe-brand products which contain Adobe-brand software.

34. Defendants are not authorized distributors and/or resellers of ESD copies of Adobe-Branded Software.  Defendants offer for sale, sell, and/or distribute ESD copies of Adobe-Branded Software, without a license, to resellers and end users in the United States and within this judicial district.

35. Upon further investigation by Plaintiff of Defendants, it has become apparent that Defendants are engaged in an ongoing infringing concern whose primary business consists of systematically infringing upon Plaintiff's Trademarks and Copyrights in order to generate substantial illegal revenues.

36. By these sales and on information and belief, Defendants have imported, advertised, marketed, offered for sale, sold and distributed numerous counterfeit and/or unauthorized Adobe-Branded Software products that infringe on Plaintiff's Trademarks and Copyrights, resulting in thousands if not millions of dollars in ill-begotten gains from Defendants' infringement. Defendants' other numerous dealings in counterfeit and/or unauthorized product (including importing, advertising, displaying, distributing, selling and/or offering to sell counterfeit and/or unauthorized product) violate Plaintiff's exclusive rights in Plaintiff's

1    Copyrights and use images and marks that are confusingly similar to, identical to, and/or

2    constitute counterfeit reproductions of Plaintiff's Trademarks to confuse consumers and aid in

3    the promotion and sales of Defendants' unauthorized product.

4         37.    Defendants' conduct and use began long after Plaintiff's adoption and use of its

5    ADOBE®, ACROBAT®, ADOBE AUDITION®, AFTER EFFECTS®, CAPTIVATE®, COLD

6    FUSION®, CONTRIBUTE®, CREATIVE SUITE®, DIRECTOR®, DREAMWEAVER®,

7    FIREWORKS®, FLASH BUILDER®, FLASH CATALYST®, FRAME MAKER®,

8    FREEHAND®, ILLUSTRATOR®, INCOPY®, INDESIGN®, LIGHTROOM®,

9    LIVECYCLE®, OVATION®, PAGEMAKER®, PHOTOSHOP®, ROBOHELP®, and various

10   design trademarks, after Plaintiff obtained the copyright and trademark registrations alleged

11   above, and after Plaintiff's Trademarks became famous.  Indeed, Defendants had knowledge of

12   Plaintiff's ownership of the Trademarks, and of the fame in such Trademarks, prior to the actions

13   alleged herein and adopted them in bad faith and with intent to cause confusion and dilute

14   Plaintiff's Trademarks.   Defendants also had knowledge of Plaintiff's ownership of its

15   Copyrights and copied, imported, offered for sale, sold, and/or distributed unauthorized copies of

16   the Copyrights in order to illegally profit from Plaintiff's Copyrights.

17        38.    Defendants' actions were committed with full knowledge that their conduct

18   constituted infringement of Plaintiff's Trademarks and Copyrights.  On information and belief,

19   Defendants were informed by their customers on numerous occasions that Defendants' products

20   were unauthorized and that Defendants' resellers were being sued by Plaintiff for trademark and

21   copyright infringement.

22        39.    Defendants' actions were committed in bad faith and with the intent to dilute

23   Plaintiff's Trademarks, and to cause confusion, mistake or to deceive the consuming public and

24   the public at large as to the source, sponsorship and/or affiliation of Defendants and/or

25   Defendants' counterfeit and unauthorized goods. By their wrongful conduct, Defendants have

26   traded upon and diminished Plaintiff's goodwill.

27   / / /

28   / / /

10

**COMPLAINT FOR DAMAGES**

40.     In committing these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which has and will continue to cause irreparable harm to Plaintiff:  (i) infringed and diluted Plaintiff's rights in Plaintiff's Trademarks; (ii) infringed Plaintiff's Copyrights; (iii) applied counterfeit marks; (iv) misled the public into believing there is an association or connection between Defendants and Plaintiff and/or the products advertised and sold by Defendants and Plaintiff; (v) used false designations of origin on or in connection with its goods and services; (vi) committed unfair competition; and (vii) unfairly profited from such activity.  Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiffs.

**FIRST CAUSE OF ACTION**

**(Infringement of Registered Trademarks Against Defendants ALGHAZZY and DOES 1-10, Inclusive)**

**[15 *U.S.C.* §1114/*Lanham Act* §32(a)]**

41.     Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-40.

42.     Plaintiff has continuously used Plaintiff's Trademarks in interstate commerce since at least as early as 1993.

43.     Plaintiff, as the owner of all right, title and interest in and to Plaintiff's Trademarks, has standing to maintain an action for trademark infringement under the Trademark Statute, 15 *U.S.C.* §1114.

44.     Defendants are, and at the time of their actions complained of herein were, actually aware that Plaintiff is the registered trademark holder of Plaintiff's Trademarks (*see* non-exhaustive list of Plaintiff's trademark registrations attached hereto as **Exhibit A**).

45.     Defendants did not and failed to obtain the consent or authorization of Plaintiff as the registered owner of Plaintiff's Trademarks to deal in and commercially distribute, market and sell Adobe-Branded Software products bearing Plaintiff's Trademarks into the stream of commerce.

46.     Defendants intentionally and knowingly used in commerce the reproductions, counterfeits, copies, and/or colorable imitations of Plaintiff's registered marks in connection with the sale, offering for sale, and/or distribution of Defendant's software products by importing,

offering, advertising, promoting, retailing, selling, and/or distributing counterfeit and/or unauthorized copies of Adobe-Branded Software bearing Plaintiff's Trademarks.

47.     Defendants reproduced, counterfeited, copied, and colorably imitated Plaintiff's Trademarks and applied such reproductions, counterfeits, copies, or colorable imitations to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution and/or advertising of goods. Defendants thereupon imported, offered, advertised, promoted, retailed, sold, and/or distributed counterfeit and/or unauthorized Adobe-Branded Software bearing Plaintiff's Trademarks.

48.     Defendants' egregious and intentional use and sale of counterfeit and/or unauthorized items bearing Plaintiff's Trademarks is likely to cause confusion or mistake, or to deceive, mislead, betray, and defraud consumers who believe that items being offered for sale by Defendants are authorized products manufactured and distributed by Plaintiff.

49.     Defendants' acts have been committed with knowledge of Plaintiff's exclusive rights and goodwill in Plaintiff's Trademarks. Defendants' acts have been committed with knowledge that their conduct infringes Plaintiff's rights in Plaintiff's Trademarks. Defendants have acted willfully, in bad faith, and with the intent to cause confusion, mistake or to deceive.

50.     Plaintiff has suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to Plaintiff's Trademarks and the goodwill associated therewith, for which it has no adequate remedy at law. Thus, Plaintiff requests injunctive relief, including but not limited to preliminary relief.

51.     Defendants' continued and knowing use of Plaintiff's Trademarks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered trademarks in violation of Section 32 of the *Lanham Act*, 15 *U.S.C.* §1114. Based on such conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies provided by sections 1116, 1117, and 1118, including Defendants' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

/ / /

**SECOND CAUSE OF ACTION**

**(False Designation of Origin / False or Misleading Advertising / Unfair Competition**

**Against Defendants ALGHAZZY and DOES 1-10, Inclusive)**

**[15 *U.S.C.* §1125(a)/*Lanham Act* §43(a)]**

52.     Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-51.

53.     Plaintiff, as the owner of all common law right, title, and interest in and to Plaintiff's Trademarks, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, *Lanham Act* §43(a) (15 *U.S.C.* §1125). Plaintiff's Trademarks are inherently distinctive and/or have acquired distinctiveness.

54.     Defendants have, without authorization, on or in connection with their goods and services, used in commerce marks that are confusingly similar to Plaintiff's Trademarks and/or have made false designations of origin which are likely to cause confusion, mistake or to deceive as to the affiliation, connection or association of Defendants with Plaintiff and/or as to the origin, sponsorship or approval of Defendants' goods or services or commercial activities.

55.     Defendants' conduct described above violates the *Lanham Act*, and Defendants have unfairly competed with and injured Plaintiff and, unless immediately restrained, will continue to injure Plaintiff, causing damage to Plaintiff in an amount to be determined at trial. Defendants' actions are causing and will continue to cause irreparable injury to Plaintiff's goodwill and reputation associated with the value of Plaintiff's Trademarks.

56.     On information and belief, the conduct of Defendants has been knowing, deliberate, willful, and intended to cause confusion, mistake or deception, all in blatant disregard of Plaintiff's rights.

57.     Defendants knew or, by the exercise of reasonable care, should have known that their adoption and commencement of use in commerce and continuing use of marks that are confusingly similar to and constitute a counterfeit reproduction of Plaintiff's Trademarks would cause confusion, mistake, or deception among purchasers, users and the public.

58.     Defendants' egregious and intentional use and sale of counterfeit and/or unauthorized software bearing Plaintiff's Trademarks unfairly competes with Plaintiff and is

likely to cause confusion, mistake or to deceive, mislead, betray, and defraud consumers to believe that Defendants' unauthorized products are genuine, authorized Adobe-Branded Software.

59. Defendants' continuing and knowing use of Plaintiff's Trademarks constitutes false designation of origin and unfair competition in violation of Section 43(a) of the *Lanham Act*, 15 *U.S.C.* §1125(a), causing Plaintiff to suffer substantial and irreparable injury for which it has no adequate remedy at law.

60. Defendants' wrongful conduct has permitted or will permit them to make substantial sales and profits on the strength of Plaintiff's marketing, advertising, sales and consumer recognition. As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff has been and will be deprived of sales of its products in an amount as yet unknown but to be determined at trial, and has been deprived and will be deprived of the value of its marks as commercial assets in an amount as yet unknown but to be determined at trial. Plaintiff seeks an accounting of Defendants' profits and requests that the Court grant Plaintiff three times that amount in the Court's discretion.

61. Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, including but not limited to preliminary relief, as well as monetary damages and other remedies as provided by the *Lanham Act*, including Defendants' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

## THIRD CAUSE OF ACTION

### (Dilution Against Defendants ALGHAZZY and DOES 1-10, Inclusive)

### [15 *U.S.C.* §1125(c)]

62. Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-61.

63. Plaintiff's Trademarks are distinctive and famous within the meaning of the *Lanham Act*.

64. Upon information and belief, Defendants' unlawful actions began long after Plaintiff's Trademarks became famous, and Defendants acted knowingly, deliberately and

willfully with the intent to trade on Plaintiff's reputation and to dilute or tarnish Plaintiff's Trademarks.  Defendants' conduct is willful, wanton and egregious.

65.    Defendants' intentional sale of counterfeit and/or unauthorized software bearing Plaintiff's Trademarks is likely to cause confusion, mistake, or to deceive, mislead, betray, and defraud consumers to believe that Defendants' substandard and/or limited software are authorized, full retail versions of Adobe-Branded Software.  The actions of Defendants complained of herein have diluted and will continue to dilute Plaintiff's Trademarks and are likely to impair the distinctiveness, strength and value of Plaintiff's Trademarks and injure the business reputation of Plaintiff and its marks.

66.    Defendants' acts have caused and will continue to cause Plaintiff irreparable harm.  Plaintiff has no adequate remedy at law to compensate it fully for the damages that have been caused and which will continue to be caused by Defendants' unlawful acts, unless they are enjoined by this Court.

67.    As the acts alleged herein constitute a willful violation of section 43(c) of the *Lanham Act*, 15 *U.S.C.* §1125(c), Plaintiff is entitled to injunctive relief, including but not limited to preliminary relief, as well as monetary damages and other remedies provided by 15 *U.S.C.* §§1116, 1117, 1118, and 1125(c), including Defendants' profits, treble damages, reasonable attorney's fees, costs and prejudgment interest.

### FOURTH CAUSE OF ACTION

**(Federal Copyright Infringement Against Defendants ALGHAZZY and DOES 1-10, Inclusive)**

**[17 *U.S.C.* §501(a)]**

68.    Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-67.

69.    Plaintiff is the exclusive owner of copyrights in the Adobe-Branded Software along with images and other protectable works related thereto and possesses copyright registrations with the United States Copyright Office relating to the same.

/ / /

/ / /

70.     Defendants did not seek and failed to obtain Plaintiff's consent or authorization to import, utilize, manufacture, reproduce, copy, display, prepare derivative works, distribute, sell, transfer, rent, perform, and/or market Plaintiff's copyright-protected materials.

71.     Without permission, Defendants intentionally and knowingly reproduced, counterfeited, copied, displayed, manufactured and/or distributed Plaintiff's protected works by importing, offering, advertising, promoting, retailing and/or selling counterfeit and/or unauthorized Adobe-Branded Software, which are, at a minimum, substantially similar to Plaintiff's Copyrights (*see* non-exhaustive list of Plaintiff's copyright registrations attached hereto as **Exhibit B**).

72.     Defendants' acts as alleged herein, constitute infringement of Plaintiff's Copyrights, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such protected material.

73.     Defendants' knowing and intentional copyright infringement as alleged herein has caused and will continue to cause substantial and irreparable harm to Plaintiff and has and will continue to cause damage to Plaintiff.  Plaintiff is therefore entitled to injunctive relief, including but not limited to preliminary relief, as well as damages, Defendants' profits, increased damages, and reasonable attorney's fees and costs.

### FIFTH CAUSE OF ACTION

**(Unlawful, Unfair, Fraudulent Business Practices Against Defendants ALGHAZZY and DOES 1-10, Inclusive)**

**[*California Business & Professions Code* §17200 *et seq.*]**

74.     Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-73.

75.     By marketing, advertising, promoting, selling and/or otherwise dealing in the counterfeit and/or unauthorized Adobe-Branded Software bearing Plaintiff's Trademarks, Defendants have engaged in unfair competition including unlawful, unfair and fraudulent business practices in violation of *California Business and Professions Code* §17200 *et seq*.

76.     Defendants' marketing, advertising, promoting, selling and/or otherwise dealing in counterfeit and/or unauthorized Adobe-Branded Software is in violation and derogation of

Plaintiff's rights and is likely to cause confusion, mistake and deception among consumers and the public as to the source, origin, sponsorship, or quality of the goods of Defendants, thereby causing loss, damage and injury to Plaintiff and to the purchasing public. Defendants' conduct was intended to cause such loss, damage and injury.

77. Defendants knew or by the exercise of reasonable care should have known that their marketing, advertising, promoting, selling and/or otherwise dealing in and their continuing marketing, advertising, promoting, selling and/or otherwise dealing in the counterfeit and/or unauthorized product would cause confusion, mistake or deception among purchasers, users and the public.

78. By marketing, advertising, promoting, selling and/or otherwise dealing in and their continuing marketing, advertising, promoting, selling and/or otherwise dealing in counterfeit and/or unauthorized versions of Adobe-Branded Software bearing Plaintiff's Trademarks, Defendants intended to, did and will induce customers to purchase their products by trading off the extensive goodwill built up by Plaintiff in its marks.

79. Upon information and belief, the conduct of Defendants has been knowing, deliberate, willful, and intended to cause confusion, mistake or to deceive, all in blatant disregard of Plaintiff's rights.

80. Defendants' wrongful conduct, as alleged above, has permitted and will permit them to make substantial sales and profits on the strength of Plaintiff's nationwide marketing, advertising, sales and consumer recognition. As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff has been and will be deprived of substantial sales of its products in an amount as yet unknown but to be determined at trial, and has been and will be deprived of the value of its trademarks as commercial assets, in an amount as yet unknown but to be determined at trial. Plaintiff seeks restitution in this matter, including an order granting Defendants' profits stemming from their infringing activity, and Plaintiff's actual and/or compensatory damages.

/ / /

/ / /

81. Plaintiff has no adequate remedy at law for Defendants' continuing violation of its rights set forth above. Plaintiff seeks injunctive relief, including but not limited to preliminary relief.

82. Plaintiff further requests a court order that an asset freeze or constructive trust be imposed over all monies in Defendants' possession that rightfully belong to Plaintiff.

**SIXTH CAUSE OF ACTION**

**(Unfair Competition Against Defendants ALGHAZZY and DOES 1-10, Inclusive)**

**[California Common Law]**

83. Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-82.

84. By marketing, advertising, promoting, selling and/or otherwise dealing in counterfeit and/or unauthorized Adobe-Branded Software, Defendants have engaged in unfair competition including unlawful, unfair and fraudulent business practices in violation of the common law of the State of California.

85. Defendants' marketing, advertising, promoting, selling and/or otherwise dealing in the counterfeit and/or unauthorized Adobe-Branded Software is in violation and derogation of Plaintiff's rights and is likely to cause confusion, mistake and deception among consumers and the public as to the source, origin, sponsorship, or quality of the goods of Defendants, thereby causing loss, damage and injury to Plaintiff and to the purchasing public. Defendants' conduct was intended to cause such loss, damage and injury.

86. Defendants knew or by the exercise of reasonable care should have known that their marketing, advertising, promoting, selling and/or otherwise dealing in and their continuing marketing, advertising, promoting, selling and/or otherwise dealing in the counterfeit and/or Adobe-Branded Software would cause confusion mistake or deception among purchasers, users and the public.

87. By marketing, advertising, promoting, selling and/or otherwise dealing in and their continuing marketing, advertising, promoting, selling and/or otherwise dealing in counterfeit and/or unauthorized versions of Adobe-Branded Software bearing Plaintiff's

Trademarks, Defendants intended to, did and will induce customers to purchase their products by trading off the extensive goodwill built up by Plaintiff in its marks.

88.    Upon information and belief, the conduct of Defendants has been knowing, deliberate, willful, and intended to cause confusion, mistake or to deceive, all in blatant disregard of Plaintiff's rights.

89.    Defendants' wrongful conduct, as alleged above, has permitted and will permit them to make substantial sales and profits on the strength of Plaintiff's nationwide marketing, advertising, sales and consumer recognition.  As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff has been and will be deprived of substantial sales of its products in an amount as yet unknown but to be determined at trial, and has been and will be deprived of the value of its trademarks as commercial assets, in an amount as yet unknown but to be determined at trial.  Plaintiff seeks restitution in this matter, including an order granting Defendants' profits stemming from their infringing activity, and Plaintiff's actual and/or compensatory damages.

90.    Plaintiff has no adequate remedy at law for Defendants' continuing violation of its rights set forth above.  Plaintiff seeks injunctive relief, including but not limited to preliminary relief.

91.    Plaintiff further requests a court order that an asset freeze or constructive trust be imposed over all monies in Defendants' possession that rightfully belong to Plaintiff.

92.    Plaintiff seeks exemplary or punitive damages for Defendants' intentional misconduct.

### PRAYER OF RELIEF

WHEREFORE, Plaintiff ADOBE SYSTEMS INCORPORATED prays for judgment against Defendants SHAMCY ALGHAZZY, doing business as SA SOFTWARE, and DOES 1-10, inclusive, and each of them, as follows:

A. For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for trademark infringement under 15 *U.S.C.* §1114(a);

B. For an award of Defendants' profits and Plaintiff's damages in an amount to be

proven at trial for copyright infringement under 17 *U.S.C.* §501(a);

C. For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for false designation of origin and unfair competition under 15 *U.S.C.* §1125(a);

D. For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for trademark dilution under 15 *U.S.C.* §1125(c);

E. In the alternative to actual damages and Defendants' profits for the infringement and counterfeiting of Plaintiff's trademark pursuant to the *Lanham Act*, for statutory damages pursuant to 15 *U.S.C.* §1117(c), which election Plaintiff will make prior to the rendering of final judgment;

F. In the alternative to actual damages and Defendants' profits pursuant to 17 *U.S.C.* §504(b), for statutory damages pursuant to 17 *U.S.C.* §504(c), which election Plaintiff will make prior to the rendering of final judgment;

G. For restitution in an amount to be proven at trial for unfair, fraudulent and illegal business practices under *California Business and Professions Code* §17200;

H. For damages to be proven at trial for common law unfair competition;

I. For consequential and compensatory damages;

J. For an injunction by this Court prohibiting Defendants from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices described herein, including the advertising and/or dealing in any counterfeit and/or unauthorized product; the unauthorized use of any mark, copyright or other intellectual property right of Plaintiff; acts of trademark infringement or dilution; acts of copyright infringement; false designation of origin; unfair competition; and any other act in derogation of Plaintiff's rights;

K. For an order from the Court requiring that Defendants provide complete accountings and for equitable relief, including that Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that should have been paid if Defendants complied

with their legal obligations, or as equity requires;

L. For an order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in Defendants' possession which rightfully belong to Plaintiff;

M. For destruction of the infringing articles in Defendants' possession under 15 *U.S.C.* §1118 and 17 *U.S.C.* §503;

N. For treble damages suffered by Plaintiff as a result of the willful and intentional infringements and acts of counterfeiting engaged in by Defendants, under 15 *U.S.C.* §1117(b);

O. For damages in an amount to be proven at trial for unjust enrichment;

P. For an award of exemplary or punitive damages in an amount to be determined by the Court;

Q. For Plaintiff's reasonable attorney's fees;

R. For all costs of suit; and

S. For such other and further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff ADOBE SYSTEMS INCORPORATED respectfully demands a trial by jury in this action.

DATED:  March 27, 2015                                        JOHNSON & PHAM, LLP


By: /s/ Christopher Q. Pham, Esq.
Christopher Q. Pham, Esq.
Marcus F. Chaney, Esq.
Jason R. Vener, Esq.
Attorneys for Plaintiff
ADOBE SYSTEMS INCORPORATED

21
**COMPLAINT FOR DAMAGES**